# EXHIBIT "H"


# GOLDBERG SEGALLA LLP

June 9, 2015

**Via Certified Mail/RRR**
**And Via U.S. Mail**

Priscilla Properties LLC
c/o Mr. Alfred Tuff
44 Sunrise Avenue
Bridgehampton, NY 11932

**VIA U.S. Mail**

Priscilla Properties
c/o Mr. Alfred Tuff
PO Box 1412
Bridgehampton, NY 11932

**Via Certified Mail/RRR**
**And Via U.S. Mail**

Priscilla Properties
c/o Mr. Mark J. Catalano
10 Pantigo Road
East Hampton, NY 11937

|        |                 |                       |
|--------|-----------------|-----------------------|
| Re:    | Insured:        | Priscilla Properties LLC. |
|        | Policy No.:     | CPS1149753            |
|        | Policy Period:  | 02/27/10 – 02/27/11   |
|        | Claim No.:      | 01650230              |
|        | GS File No.:    | 14002.0473            |

Dear Messrs. Tuff and Catalano:

We represent Scottsdale Insurance Company ("Scottsdale") in connection with the above-referenced commercial general liability insurance policy (the "Policy"). Scottsdale has recently received notice of a lawsuit against, among others, Priscilla Properties LLC ("Priscilla") concerning an injury that occurred at the residential construction project located at 47 Buell Lane Ext., East Hampton, New York (the "Project").

As discussed in greater detail below, Scottsdale's investigation reveals that Priscilla made certain material misrepresentations and/or omissions of fact when applying for insurance coverage with Scottsdale by failing to disclose the true nature and scope of the operations for which it sought coverage. Accordingly, please be advised that Scottsdale intends to immediately file a declaratory judgment action seeking to rescind the Policy.

## I. The Lawsuit and the Project

As noted above, on or about May 11, 2015, Scottsdale received notice of the lawsuit commenced on February 26, 2013 in the Supreme Court of the State of New York, County of Suffolk, captioned

June 9, 2015
Page 2

*Belanger v. Graham et al.*, Index No. 005761/13 (the "Lawsuit"). The Lawsuit names as defendants, Priscilla, Monica A. Graham, Monica Graham Trust, and Pine Construction Corp. As part of its investigation, Scottsdale requested and received copies of certain documents related to the Lawsuit, including the pleadings, various document discovery exchanged between the parties, and copies of the transcripts from deposition of fact witnesses. In particular, Scottsdale reviewed the deposition transcript of plaintiff, Nancy Belanger, Priscilla by Mr. Alfred Tuff, and Ms. Monica Graham, who was the owner of the Project.

Based on Scottsdale's investigation, it understands that the Lawsuit arises out of an alleged injury sustained by Neil Belanger when he fell from a ladder while working at the Project. Scottsdale further understand that plaintiffs in the Lawsuit allege that, as a result of his injury, Mr. Belanger became addicted to pain medication, ultimately resulting in his death. The Lawsuit alleges causes of action against Priscilla for negligence, violations of Section 200, 240, and 241(6) of the Labor Law of the State of New York, and wrongful death. In connection with the Lawsuit, co-defendants Monica Graham and Monica Graham Trust (collectively, the "Graham Defendants"), filed cross-claims against Priscilla for contribution, common-law indemnification, contractual indemnification, and breach of contraction for failure to procure insurance for the benefit the Graham Defendants.

The deposition testimony and other discovery exchanged in the Lawsuit described the various roles and capacities of the defendants named in the lawsuit. More specifically, Mr. Tuff's deposition testimony indicates that Priscilla was acting as the general contractor and and/or construction manager for the Project. Likewise, Ms. Graham confirmed that Priscilla was acting as the construction manager or general contractor for the Project, including retaining and overseeing subcontractors for various trades. Further, Mr. Tuff testified that Priscilla has acted in the capacity as a general contractor and/or construction manager on other projects in the past. Mr. Tuffs deposition testimony also indicates that Priscilla did not utilize written contracts when engaging subcontractors for the Project.

## II. Explanation of Scottsdale's Coverage Position

Prior to Scottsdale issuing the Policy, a Commercial Insurance Application dated February 23, 2010 (the "CGL Application") and Artisan Contractors Supplemental Application dated February 22, 2010 ("Supplemental Application") were submitted by or on behalf of Priscilla. Based on, and in reliance on, the accuracy and completeness of the information in the CGL Application and the Supplemental Application (collectively, the "Applications"), Scottsdale issued the Policy for the Policy Period of February 27, 2010 and February 27, 2011.

Both Applications describe the nature of Priscilla's business as residential interior carpentry. The Supplemental Application further represents that 100% of Pricilla's operations were performed in its capacity as an "Artisan Contractor" in connection with residential remodeling work. Prior to issuing the Policy, Priscilla disclosed payroll in the amount of $27,500 allocated solely to its work in "Carpentry – Interior."

The CGL Application contain the following notice:

> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO
> DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON

June 9, 2015
Page 3

> FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES….

Similarly, the Supplemental Application contains the following notice:

> **FRAUD WARNING**: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

In addition, the Scottsdale Policy contains the following relevant Condition:

> 6. **Representations**
>    By accepting this policy, you agree:
>    a. The statements in the Declarations are accurate and complete;
>    b. Those statements are based upon representations you made to us; and
>    c. We have issued this policy in reliance upon your representations.

*See*, Policy, form CG 00 01 12 07, pg. 12 of 16.

The Applications submitted to Scottsdale to procure the Policy state that Priscilla's operations consist solely of residential interior carpentry. Priscilla did not disclose that it also engages in other services including services in the capacity as a construction manager and/or general contractor. However, Priscilla was in fact acting as the general contractor and/or construction manager at the Project. Specifically, in the Supplemental Application, Priscilla was asked if it "acted in the capacity of a General Contractor in the past" and if it is a "contraction [*sic*]/project manager or consultant," to which it answered "NO" to both. However, Mr. Tuff testified about his duties which were those of a general contractor, and specifically testified that his responsibilities, on behalf of Priscilla, were to "construction manage." Likewise, Priscilla did not disclose that it performed carpentry or other services for new construction projects. In this regard, Priscilla represented that the type of work it performed consisted solely of "Residential/Remodeling." When asked what percentage of work was "Residential/New," Priscilla responded "0%." However, both Mr. Tuff and Ms. Graham testified that Priscilla performed services for the construction of Ms. Graham's new home.

In addition to the misrepresentations and/or omissions related to the scope of services provided by Priscilla, it also made misrepresentations and/or omissions related to its liability controls. When asked if it "use[s] a written contract with customers," and "use[s] a written contract with subcontractors,"

June 9, 2015
Page 4

Priscilla responded "Yes." However, Mr. Tuff testified that it did not have a written contract with Ms. Graham for the work performed at the Project, and as a matter of business practice, did not use written contracts with subcontractors.

The misrepresentations and/or omissions of fact in the Applications were material to Scottsdale's agreement to issue and renew the Policy and its calculation of the appropriate amount of premium to be charged. Accordingly, please be advised that the Policy is void as it was procured on the basis of material misrepresentations and/or omissions of fact made by Priscilla in its policy applications. Further, please be advised that Scottsdale will proceed with the commencement of a declaratory judgment action seeking a rescission of the Policy *ab initio*. To the extent further facts develop which reveal that any other applications for any other policy periods contain material misrepresentations and/or omissions of fact, Scottsdale further reserves the right to seek judicial rescission of those policies as well. A return of premium paid by Priscilla for the Policy will be made to Priscilla shortly under a separate cover, directly from Scottsdale.

With respect to the defense of the Lawsuit, Scottsdale will provide Priscilla with a defense under the Policy as of May 11, 2015, the date that Scottsdale received notice of Lawsuit. However, Scottsdale will be seeking rescission of the Policy. The defense is being provided subject to a complete reservation of all rights Scottsdale has under the policy and applicable law including the right to seek reimbursement of defense expenses. Thus, if/when the Policy is rescinded, the Lawsuit will not be covered. Accordingly, Scottsdale recognizes that you may wish to retain independent counsel, or continue to utilize Tarbot & Lester, PLLC to continue to protect Priscilla's interests in connection with the Lawsuit. Please be advised, however, that Scottsdale will pay only reasonable and necessary attorney's fees if you elect to continue to utilize the services of Tarbot & Lester, or retain other independent counsel.

The foregoing statement of Scottsdale's intention to rescind the Policy is based on Scottsdale's investigation and review of documents that have been provided to date. This correspondence is not intended to be, nor shall it be construed as an exhaustive listing of the Policy's terms, conditions, definitions, or exclusions that might apply. This letter is not intended to be, nor should it be construed as, an estoppel or waiver of any right or basis which Scottsdale may have to disclaim coverage, and Scottsdale expressly reserves all rights and defenses in this regard. The Policy, in their entirety, is incorporated by reference as if it had been stated in full and Scottsdale reserves the right under the Policy and applicable law to cite additional Policy provisions as may be appropriate. If you are aware of any additional information or authority that would require Scottsdale to reevaluate its position, please provide it to us immediately.

Should you wish to take this matter up with the New York State Insurance Department, you may file with the Department either on its website at www.ins.state.ny.us/complhow.htm or you may write to or visit the Consumer Services Bureau, New York State Department, at:

25 Beaver Street
New York, NY 10004

or

One Commerce Plaza
Albany, NY 12257

June 9, 2015
Page 5

    or

    200 Old Country Road Suite 340
    Mineola, NY 11501

    or

    Walter J. Mahoney Office Building
    65 Court Street
    Buffalo, NY 14202

For your protection, the State of New York requires us to inform you that any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

Should you have any questions, please feel free to contact the undersigned.

                Very truly yours,

                *Todd D. Kremin*

                Todd D. Kremin

cc:    Joan DiFalco
       Maloney & Maloney, Inc.
       108 West Montauk Highway
       P.O. Box 1024
       Hampton Bays, NY 11946

       Gruenberg Kelly Della
       Attorneys for Plaintiffs
       700 Koehler Avenue
       Ronkonkoma, NY 11779

       Tarbet & Lester PLLC
       524 Montauk Highway
       PO Box 2635
       Amagansett, NY 11930

       Perez & Varvaro
       Attorneys for Graham
       333 Earle Ovington Blvd
       PO Box 9372
       Uniondale, NY 11553

June 9, 2015
Page 6

> Pine Construction Corp.
> 66 Ash Street
> East Quogue, NY 11942