UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------------x
SCOTTSDALE INSURANCE COMPANY,

        Plaintiff,

  -against-                                     **Memorandum of Decision & Order**

PRISCILLA PROPERTIES, LLC; NANCY BELANGER, Individually   15-cv-4764(ADS)(AYS)
and as Administratrix of the Estate of NEIL BELANGER; and PINE
CONSTRUCTION CORP.,

        Defendants.
----------------------------------------------------------------------------------x

APPEARANCES:

**Goldberg Segalla LLP**
*Attorneys for the Plaintiff*
200 Garden City Plaza, Suite 520
Garden City, NY 11530
    By:   Todd D. Kremin, Esq., Of Counsel

**Gruenberg Kelly Della**
*Attorneys for the Defendant Nancy Belanger, Individually and*
   *as Administratrix of the Estate of Neil Belanger*
700 Koehler Avenue
Ronkonkoma, NY 11779
       By:   Zachary M. Beriloff, Esq., Of Counsel

NO APPEARANCES:

**Priscilla Properties, LLC**
*Defendant*

**Pine Construction Corp.**
*Defendant*

SPATT, District Judge:

     In this declaratory judgment action, the Plaintiff Scottsdale Insurance Company seeks to rescind an insurance policy that was allegedly issued under false pretenses, and to avoid any continuing liability thereunder. For the reasons that follow, the Plaintiff's motion for a judgment declaring the policy void *ab initio* is granted in its entirety.

# I. BACKGROUND

A.  The Policy

In early-2010, the Defendant Priscilla Properties, LLC ("Priscilla") evidently sought to obtain insurance coverage from the Plaintiff Scottsdale Insurance Company ("Scottsdale").

To that end, on or about February 22, 2010, Priscilla completed an application for a policy of commercial general liability insurance. In this application, Priscilla described the nature of its business as "interior residential carpentry contractor."

On the same date, Priscilla also completed an Artisan Contractors Supplemental Application. Again, when asked to provide details regarding its operations, Priscilla responded "Residential Int Carpentry." In this regard, Priscilla indicated that it maintained a $27,500 payroll, all of which was attributable to residential remodeling work, and none of which was attributable to the construction of new homes. When asked to identify three current or planned projects, Priscilla responded "Miscellaneous Int Carpentry[,] Suffolk Co, NY." Similarly, when asked to identify the five largest jobs it completed in the last three years, Priscilla responded "Miscellaneous Small Int Carpentry[,] Suffolk Co NY."

Priscilla also indicated that it had not acted in the capacity of general contractor in the past; that it was not a "contraction [*sic*]/project manager or consultant"; and that it utilized written contracts with customers and subcontractors that contained hold harmless agreements.

As to both of these documents, Priscilla affirmed the truth of the information it provided.

Thus, on or about February 27, 2010, Scottsdale issued to Priscilla commercial general liability policy number CPS1149753 (the "Policy") for the policy period February 27, 2010 to February 27, 2011. Consistent with the information provided on the application forms, the Policy describes Priscilla as a "carpentry contractor," and calculated its monthly premium based on the specified rate for interior carpentry only.

B.   The State Court Action

On or about February 26, 2013, Nancy Belanger, in her individual capacity and as the administratrix of the estate of her deceased son Neil Belanger, commenced an action in the New York State Supreme Court for the County of Suffolk (the "Suffolk Action") against Monica A. Graham ("Graham"); the Monica Graham Trust (the "Graham Trust," together with Graham, the "Graham Defendants"); Priscilla; and Pine Construction Corp. ("Pine").

In general, the complaint in the Suffolk Action alleged that the Graham Defendants retained Priscilla and/or Pine to perform certain construction work on a home that the Graham Defendants owned at 47 Buell Lane in East Hampton (the "Graham Property"). The complaint further alleged that on October 26, 2010, at the direction of Priscilla and/or Pine, Neil Belanger was working as a laborer on the Graham Property, when he fell from a ladder and sustained serious injuries.

It appears that Priscilla timely tendered its defense in the Suffolk Action to Scottsdale under the terms of the Policy.

However, during discovery in the Suffolk Action – including a deposition of Graham on September 15, 2014, and a deposition of Priscilla, by its principal Alfred Tuff, on March 27, 2015 – several facts came to light that form the basis of this rescission action.

In particular, apparently contrary to Priscilla's representations in its insurance applications, the deposition testimony demonstrated that: (1) the project Priscilla was performing when Neil Belanger suffered his fall involved the construction of a new residential home for the Graham Defendants; (2) Priscilla was acting as the general contractor and/or construction manager for that project and, in that regard, had retained various subcontractors to perform specified trade work; (3) Priscilla had acted as a general contractor and/or construction manager on past projects; (4) Priscilla had also constructed new homes and performed other exterior work in the past; and (5) Priscilla did not utilize written contracts either with its customers, including the Graham Defendants, or with retained subcontractors.

C.  The Present Action

On June 9, 2015, counsel for Scottsdale sent a letter to Priscilla by certified mail, return receipt requested, stating that Scottsdale's investigation into the Suffolk Action had revealed that Priscilla made certain material misrepresentations and/or omissions of fact when applying for the Policy. Thus, Scottsdale notified Priscilla that it would be returning any premiums paid by Priscilla, and that it intended to immediately file a declaratory judgment action seeking to rescind the Policy.

On August 14, 2015, Scottsdale commenced this action, alleging a claim for rescission of the Policy, and, consequently, a declaration that Scottsdale has no continuing obligation to defend or indemnify Priscilla in the Suffolk Action.

As outlined above, the complaint alleges that Priscilla made materially false representations in order to procure the Policy, upon which Scottsdale reasonably relied in issuing coverage.

Further, citing its own underwriting guidelines, Scottsdale alleges that, had it known the true nature and scope of Priscilla's business, it would not have issued the Policy. Specifically, Scottsdale's New York Artisan Program, pursuant to which the Policy was issued, is intended "[t]o provide coverage for Artisan contractors who specialize in one or more trade operations performing work for hire/bid for building owners or general contractors." Thus, the guidelines for this program explicitly exclude general contractors and residential home builders, as Priscilla appears to be.

At a minimum, referring to the schedule of premium rates in the guidelines, Scottsdale asserts that, had it known the true nature and scope of the work Priscilla performed, it would not have agreed to insure Priscilla for a premium amount based solely on interior carpentry work.

II.  Discussion

A.  The Standard for Rescission Under New York Law

"Under New York law, an insurer may rescind an insurance policy that was issued in reliance upon material misrepresentations." *Chicago Ins. Co. v. Kreitzer & Vogelman*, No. 97-cv-8619, 2000 U.S. Dist. LEXIS 80, at *15 (S.D.N.Y. 2000) (citing *Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan*, 77

F.3d 48, 52 (2d Cir. 1996); *Aetna Cas. & Surety Co. v. Retail Local 906*, 921 F. Supp. 122, 131 (E.D.N.Y. 1996), *aff'd*, 106 F.3d 34 (2d Cir. 1997)). "Such a policy is considered void *ab initio*, and all obligations under a rescinded policy are therefore extinguished." *Kreitzer & Vogelman*, 2000 U.S. Dist. LEXIS 80, at *16 (internal citations omitted).

"The insurer bears the burden of establishing both that there has been a misrepresentation and that the misrepresentation was material." *Id.* (citing *Home Ins. Co. of Ill. v. Spectrum Info. Techs.*, 930 F. Supp. 825, 835 (E.D.N.Y. 1996); *Retail Local 906*, 921 F. Supp. at 131); *see also Landmark Am. Ins. Co. v. S&S Pub.*, No. 10-cv-2982, 2011 U.S. Dist. LEXIS 132659, at *6 (E.D.N.Y. Nov. 14, 2011) (noting that "[a]s to rescission, the insurer bears the burden of proving the making of a misrepresentation and that the insurer's knowledge of that misrepresentation would have resulted in the insurer's refusal to issue [the] policy in the first place") (citing *Vella v. Equitable Life Assurance Soc.*, 887 F.2d 388, 391 (2d Cir. 1989)).

1. **Misrepresentation of Fact**

"Section 3105(a) of New York's Insurance Law defines 'misrepresentation' as a false 'statement as to past or present fact, made to the insurer by . . . the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof.'" *Kreitzer & Vogelman*, 2000 U.S. Dist. LEXIS 80, at *18. "The concept of misrepresentation encompasses both false affirmative statements and the failure to disclose where a duty to disclose exists." *Id.* "While generally an 'applicant for insurance is under no duty to volunteer information where no question plainly and directly requires it to be furnished,' [*Vella*, 887 F.2d at 392], an applicant is required to provide truthful and comprehensive answers to the questions asked in connection with his or her insurance application(s), and fraudulent concealment may at times void an insurance policy even where the fact concealed was not inquired into by the insurer. *See Retail Local 906*, 921 F. Supp. at 132." *Id.* at *19.

"So long as a misrepresentation is material, it is no defense to an action for rescission that the misrepresentation was innocently made." *Vella*, 887 F.2d at 391 (quoting *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 53 A.D.2d 214, 216, 385 N.Y.S.2d 308 (1st Dep't 1976), *aff'd*, 42 N.Y.2d 928, 366 N.E.2d 1361, 397 N.Y.S.2d 1007 (1977)).

2. Materiality

"Section 3105(b) of New York's Insurance Law provides that a misrepresentation is material if 'knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer' to make the contract." *Kreitzer & Vogelman*, 2000 U.S. Dist. LEXIS 80, at *19. Stated differently, "[m]ateriality is measured by whether the insurer was induced by the insured's statements 'to issue a policy that it would not have otherwise issued.'" *Guard Ins. Grp. v. Reliable Ins. Servs., LLC*, No. 15-cv-2949, 2016 U.S. Dist. LEXIS 15900, at *6 (E.D.N.Y. Feb. 9, 2016) (quoting *Landmark Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 132659, at *6-*7).

"Courts have expanded this statutory definition of materiality somewhat to allow an insurance company to 'avoid liability on the policy by showing that had it known the truth it would not have issued the exact same policy it did issue.'" *Kreitzer & Vogelman*, 2000 U.S. Dist. LEXIS 80, at *19 (quoting *Vella*, 887 F.2d at 391). In this regard, "'[t]he question . . . is not whether the company might have issued the policy even if the information had been furnished; the question in each case is whether the company has been induced to accept an application that it might otherwise have refused.'" *Mutual Benefit Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30, 32 (2d Cir. 1998) (quoting *Geer v. Union Mut. Life Ins. Co.*, 273 N.Y. 261, 269, 7 N.E.2d 125 (1937)).

> In deciding the question of materiality, a court must consider whether the alleged misrepresentations were material at the time the contract was entered into, *see Christiania General Ins. Corp. v. Great American Ins. Co.*, 979 F.2d 268, 279 (2d Cir. 1992), based on, *inter alia*:
>
> Evidence of the insurer's practice with respect to similar risks, as shown by such documents as the insurer's underwriting manuals or rules, and by testimony of a

6

qualified employee of the insurer that the insurer would not have issued the particular contract it did had the facts been disclosed.

*Cohen v. Mutual Benefit Life Ins. Co.*, 638 F. Supp. 695, 697 (E.D.N.Y. 1986); *see Berger v. Manhattan Life Ins. Co.*, 805 F. Supp. 1097, 1103 (S.D.N.Y. 1992).

*Kreitzer & Vogelman*, 2000 U.S. Dist. LEXIS 80, at *20-*21.

"The question of materiality is typically one of fact for resolution at trial, but 'where the evidence concerning the materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine.' " *Id.* at *21 (quoting *Process Plants Corp.*, 53 A.D.2d at 216).

With these standards in mind, the Court turns to the parties' substantive contentions.

B.     **As to Whether Summary Judgment Against the Belanger Defendants is Warranted**

First, Scottsdale moves under the provisions of Federal Rule of Civil Procedure ("FED. R. CIV. P.") 56 for summary judgment on its claim for rescission as against Nancy Belanger, individually and on behalf of the estate of Neil Belanger (collectively, the "Belanger Defendants").

For the reasons that follow, that motion is granted.

1.     **The Standard of Review**

Under FED. R. CIV. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The Court 'must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party.' " *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998) (quoting *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1998)).

2.     **Application to the Facts of this Case**

In the Court's view, Scottsdale has sustained its initial burden of showing entitlement to summary judgment as to the Belanger Defendants.

In particular, Scottsdale has produced uncontroverted evidence demonstrating that, when Priscilla applied for insurance coverage, it made various misrepresentations of fact. Namely, Priscilla

falsely indicated that its business involved solely interior residential carpentry, when, in fact, it also performed extensive exterior work and even the construction of new homes. Priscilla falsely indicated that it did not act as a general contractor or construction manager, when, in fact, it regularly did so, including on the date when Neil Belanger was injured. Priscilla falsely claimed that it utilized written contracts featuring hold harmless agreements with customers and subcontractors, when, in fact, it did not.

In the Court's view, the evidence also establishes that these misrepresentations were material under New York law. In this regard, Scottsdale produced evidence in the form of its underwriting guidelines to show that, but for Priscilla's false statements, it would not have issued the Policy in question. This much is clear from the fact that, based on Priscilla's assertedly limited business operations, Scottsdale underwrote the Policy pursuant to its New York Artisan Program, which only provides coverage for subcontractors and fixes premiums based on the risk associated with their particular trade. The program is evidently meant to exclude general contractors and residential home builders.

Thus, the Court finds the evidence sufficient to establish that the nature and scope of Priscilla's work precluded it from attaining the Policy that was issued; that Scottsdale was nevertheless induced to issue the Policy based the false statements made by Priscilla in its insurance applications; and that Scottsdale would not have issued the same Policy had it known the true nature and scope of Priscilla's work. Thus, the burden shifts to the Belanger Defendants to come forward with specific facts to show that there is a genuine issue of fact for trial.

In the Court's view, they have failed to do so.

Despite appearing in this action and submitting purported opposition papers to Scottsdale's motion, the Belanger Defendants do not materially dispute the relevant facts or otherwise contend that Scottsdale is not entitled to judgment on its claim for rescission, as matter of law.

Rather, they challenge the Court's jurisdiction by asserting that, to the extent that this action seeks a declaratory judgment regarding Scottsdale's responsibilities under the Policy, it is premature because there has not yet been a determination of liability in the Suffolk Action. The Court disagrees.

As the Belanger Defendants suggest, it is fundamental that the Court's jurisdiction to adjudicate the rights and responsibilities of the parties exists only if there is an "actual controversy." 28 U.S.C. § 2201(a). However, in the insurance context, an insurer's right to dispute coverage ripens when a live claim for coverage is made by the policyholder. *See United Fin. Cas. Co. v. Paddon*, No. 16-cv-630, 2017 U.S. Dist. LEXIS 47522, at *8 (N.D.N.Y. Mar. 30, 2017).

In this case, although the state court has yet to determine Priscilla's final liability, if any, for Neil Belanger's accident, it is undisputed that Priscilla has tendered its defense to Scottsdale under the Policy. Accordingly, Scottsdale has, subject to a reservation of rights, been providing Priscilla's defense in the Suffolk Action since May 11, 2015. In the Court's view, this is a sufficiently live claim for coverage under the Policy to establish "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,'" *Harbor Distrib. Corp. v. GTE Operations Support Inc.*, 176 F. Supp. 3d 204, 210 (E.D.N.Y. 2016) (quoting *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993)).

Accordingly, the Court finds that the Belanger Defendants have failed to demonstrate a jurisdictional defect or any other issue of material fact that would preclude summary judgment on Scottsdale's claim for rescission.

Therefore, to the extent that it seeks summary judgment on its complaint against the Belanger Defendants, Scottsdale's motion is granted.

### C. As to Whether a Default Judgment against the Non-Appearing Defendants is Warranted

Scottsdale also moves under the provisions of FED. R. CIV. P. 55 for the entry of a default judgment against Priscilla and Pine. For the reasons that follow, that motion is also granted.

#### 1. The Standard of Review

A party defaults when he "fail[s] to plead or otherwise defend" the case at hand. *See Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454 (2d Cir. 2013) (quoting FED. R. CIV. P. 55(a)).

When there is a default in the course of litigation, Rule 55 sets forth the basic procedure to be followed. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). In particular, "Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *Id.*

"The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* This step of the analysis is governed by subsection (a) of Rule 55, which provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by an affidavit or otherwise, the clerk must enter the party's default."

"The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Id.* However, "simply because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Transatlantic Auto Grp. v. Unitrans-Pra Co.*, No. 08-cv-5070, 2011 U.S. Dist. LEXIS 115671, at *19 (E.D.N.Y. Sept. 9, 2011) (Report and Recommendation), *adopted*, 2011 U.S. Dist. LEXIS 111536 (E.D.N.Y. Sept. 29, 2011).

Rather, although the entry of a default results in all well-pleaded factual allegations in the complaint being accepted as true, the Court must nevertheless determine whether the complaint

states a claim upon which relief may be granted. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65-66 (2d Cir. 1981).

2. Application to the Facts of this Case

In the Court's view, Scottsdale has demonstrated its entitlement to a default judgment against Priscilla and Pine.

As to the first step of the Rule, it is noted that on August 26, 2015, Scottsdale served Priscilla and Pine with process by serving copies of the summons and complaint on the New York Secretary of State, in accordance with § 306 of the New York Business Corporation Law.

On May 18, 2016, after Priscilla and Pine failed to answer or otherwise appear in this action, Scottsdale requested that the Clerk of the Court enter their default. Copies of this request were again served through the New York Secretary of State and mailed to both parties.

On May 26, 2016, having received no response, the Clerk of the Court noted their default.

To date, neither Priscilla nor Pine has appeared in this action. Accordingly, the Court is satisfied that those parties have "failed to plead or otherwise defend" in this case, thus satisfying the requirements of Rule 55(a).

As to the second step of the Rule, for substantially the same reasons outlined above, the Court finds that Scottsdale has established its entitlement to the relief sought in the complaint.

Accordingly, to the extent that it seeks the entry of a default judgment against Priscilla and Pine, Scottsdale's motion is granted.

III. CONCLUSION

Based on the foregoing, it is **ORDERED** that:

1. Scottsdale's motion for summary judgment against the Belanger Defendants is GRANTED in its entirety; and

2. Scottsdale's motion for entry of a default judgment against Priscilla and Pine is GRANTED in its entirety; and

3. The insurance policy in question, namely, Scottsdale Insurance Company Commercial General Liability Policy Number CPS1149753 is hereby rescinded and deemed void *ab initio*; and

4. Consequently, any obligations on the part of Scottsdale under or arising from that policy are hereby extinguished, as a matter of law; and

5. On or before May 31, 2017, Scottsdale shall serve a copy of this order on Priscilla and Pine by certified mail, return receipt requested, at their last known addresses, and thereafter file proof of service on ECF; and

6. To the extent that such relief is alleged in the complaint, Scottsdale shall have until June 23, 2017 to file a formal motion to recover money damages, including reasonable attorneys' fees and costs.

If, by June 24, 2017, the Plaintiff has not filed such a motion, the Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York
May 24, 2017

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge